UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
EILEEN M. PLANT,                                    Chapter 13
          DEBTOR.                          Case No. 13-13607-WCH

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court is the "Trustee's Objection to Debtor's Amended Claim of Exemptions" (the "Objection") filed by Carolyn A. Bankowski (the "Trustee"), the standing Chapter 13 trustee, and the "Response to Trustee's Objection to Debtor's Claim of Exemptions" (the "Response") filed by Eileen M. Plant (the "Debtor"). The question presented is whether the Debtor may claim as exempt under Mass. Gen. Laws ch. 235, § 34 certain insurance proceeds which the Debtor has earmarked to replace the types of personal property described in that section, such as household goods and furnishings, which were destroyed in a fire prepetition. For the reasons set forth below, I will sustain the Objection.

**II. BACKGROUND**

      The facts are not in dispute. On March 23, 2013, and prior to the filing of this case, the Debtor suffered a catastrophic fire at her primary residence in Mansfield, Massachusetts (the "Property"). Virtually all her personal property was destroyed in the fire. At the time of the loss, the Debtor's residence was covered by a homeowner's insurance policy (the "Insurance Policy") with Arbella Mutual Insurance Company ("Arbella"). The Insurance Policy provided

1

coverage for the replacement of the building and structures, the replacement cost of the contents, and for the loss of use.

While the Debtor's home is being rebuilt, she resides in a trailer Arbella placed on the Property. Sometime between March 23, 2013 and June 13, 2013, the Debtor received a payment from Arbella in the amount of $38,000.00 constituting her replacement cost of contents payout, less a holdback predicated on proof of purchase of replacement items. The Debtor used a small portion of those proceeds to replace clothing and electronics for use in the trailer, and placed the remainder in a Money Market Account at Citizen's Bank. On June 13, 2013, the Debtor executed a Sworn Statement in Proof of Loss attesting to the values of her various associated claims.

The Property is subject to a first mortgage held by Flagstar Bank, FSB. Prior to the fire, the Property was in active foreclosure. On June 14, 2013, a week before the scheduled auction, the Debtor filed her Chapter 13 petition. On "Schedule C – Property Claimed as Exempt," ("Schedule C"), the Debtor claimed, *inter alia*, the following exemptions with respect to insurance proceeds both received and yet to be received from Arbella (the "Insurance Exemptions"):[1]

---

[1] Schedule C, Docket No. 25.

2

| Description of Property | Specify Law Providing for Each Exemption | Value of Claimed Exemption | Current Value of Property without Deducting Exemptions |
|---|---|---|---|
| Citizen's Money Market; Opened to Manage Insurance Proceeds; Initial Deposit at or around petition date in an amount of $59,000.00 jointly endorsed to Debtor and Insurance Adjuster Al Elkin; This initial payment was delineated as an initial payment for replacement contents; Resulted in approximate net to Debtor of $38,000.00; [(the "Money Market Funds")] | MGLA c. 235 § 34(1) MGLA c. 235 § 34(2) MGLA c. 235 § 34(18) | $24,175.00 $12,600.00 $1,225.00 | $38,000.00 |
| $13,608.18 balance of contents coverage payout from Arbella contingent upon proof of replacement costs; payment estimated November, 2013; [(the "Insurance Balance")] | MGLA c. 235 § 34(1) | $13,608.18 | $13,608.18 |
| Approximately $15,900.00 in attributable reimbursable living expenses and hotel rooms for the period from March 23, 2013 through the time the Mobile Home was placed on the premises by Arbella in late April / early May. Payment expected on or before November 2013; [(the "Living Expenses")][2] | MGLA c. 235 § 34(17) MGLA c. 235 § 34(15) MGLA c. 235 § 34(14) MGLA c. 235 § 34(7) MGLA c. 235 § 34(1) | $520.00 $2,500.00 $2,500.00 $600.00 $480.00 | $15,900.00 |

On August 2, 2013, the Trustee filed her initial objection to the Debtor's claim of exemptions, asserting, *inter alia*, that the Debtor could not exempt the insurance proceeds under Mass. Gen. Laws ch. 235, § 34 as claimed because the funds were not personal property of the type described in that section. The Debtor filed the Response on September 10, 2013, accompanied by a further amended Schedule C ("Amended Schedule C") which deleted the

---

[2] Curiously, at the October 24, 2013 hearing, Debtor's Counsel stated that the Debtor "is not attempting to exempt those portions of funds that were earmarked for replacement of, of hotel rooms and things like that if, indeed, the exemption that was claimed was under 34(1)." Trans. Oct. 24, 2013 at 8:24-25; 9:1-2.

3

Insurance Exemptions' reference to Mass. Gen. Laws ch. 235, § 34(15).[3]  In the Response, the Debtor urges that she is equitably entitled to claim insurance proceeds earmarked to replace her exempt personal property.  The Trustee filed the Objection to Amended Schedule C on September 11, 2013, reiterating her position that the Insurance Exemptions were ill-taken as to Mass. Gen. Laws ch. 235, §§ 34(1), (2), and (18).

I held a hearing on the Objection on October 24, 2013.  At the conclusion of oral arguments, I took the matter under advisement.  Both the Trustee and the Debtor filed supplemental briefs on November 7, 2013.

### III. POSITIONS OF THE PARTIES

A. The Trustee

The Trustee objects to the Debtor claiming an exemption in any of the insurance proceeds under Mass. Gen. Laws ch. 235, § 34(1) because that section only applies to wearing apparel, bedding, a heating unit, a stove, a refrigerator, a freezer, or a hot water heater.  Similarly, she contends that the Debtor may not claim the Money Market Funds as exempt under Mass. Gen. Laws ch. 235, §§ 34(2) and (18) because the funds are neither household furniture nor jewelry.  To the contrary, the Trustee posits that the insurance proceeds are cash and can only be exempted to the extent that the statute expressly provides.

In support of her position, the Trustee argues that, under Massachusetts law, insurance policies are separate and distinct assets from the insured property.[4]  Moreover, relying on *In re Weisner*, she asserts that insurance proceeds do not derive from the destroyed property, but the

---

[3] Amended Schedule C also addressed several other issues raised by the Trustee in her initial objection that were not repeated in the Objection.

[4] *See Converse v. Boston Safe Deposit & Trust Co.*, 315 Mass. 544, 548 (1944).

4

indemnification contract between the insurance company and debtor.[5] As such, the Trustee concludes that the insurance proceeds are also a separate asset from the insured property, and therefore, cannot be simply earmarked as a stand in.

The Trustee further argues that the statutory text, which specifically delineates what items of personal property are considered exempt, does not include any indication that funds earmarked for these items are included. Nor, she states, is there an express provision for insurance proceeds. The Trustee posits that had the Massachusetts Legislature intended to allow a debtor to exempt insurance proceeds, they easily could have included language that permits the substitution of insurance proceeds for those items delineated in Mass. Gen. Laws ch. 235, § 34. In the absence of such language, she asserts that I cannot infer that such an exemption was contemplated or is allowed.

    B. The Debtor

The Debtor concedes that the insurance proceeds are not technically provided for in Mass. Gen. Laws ch. 235, § 34, but nonetheless argues that earmarked funds should be permitted to stand in place of the exempt property. Generally, the Debtor's basis for her position waffles between law and equity. First, relying on *In re Miller*[6] and *Tucker v. Drake*,[7] she contends that the earmarking of the insurance proceeds is permissible pre-bankruptcy asset protection planning. The Debtor suggests that this case is only different in that the circumstances did not permit "more traditional asset protection planning" in light of the impending foreclosure.[8]

---

[5] *In re Wiesner*, 267 B.R. 32 (Bankr. D. Mass. 2001).

[6] *In re Miller*, 113 B.R. 98, 105 (Bankr. D. Mass. 1990).

[7] *Tucker v. Drake*, 93 Mass. 145, 146-147 (1865).

[8] Supplemental Brief in Support of Debtor's Response to Chapter 13 Trustee's Objection to Debtor's Claim of Exemptions (the "Debtor's Brief"), Docket No. 78 at 4.

Next, the Debtor essentially argues that it would be grossly inequitable not to permit her to exempt earmarked insurance proceeds necessary to replace items which the Massachusetts Legislature, through Mass. Gen. Laws ch. 235, § 34, has deemed reasonably necessary for one's household. In support, the Debtor points out that had she purchased replacement household goods and furnishings and placed them in a storage unit the day before filing her petition, there would be no question that she would be entitled to exempt a substantial amount of personal property.

The Debtor contends that *In re Wiesner* is inapposite for two reasons. First, she distinguishes that case from her own by noting that *In re Wiesner* involved post-petition catastrophic loss.[9] Second, the Debtor asserts that the debtor in *In re Wiesner* did not schedule the insurance policy giving rise to the insurance proceeds, but instead tried to prevail on an equitable argument.[10] Proper scheduling, she posits, also distinguishes her case from *In re Thurston*, where the debtor failed to disclose the existence of any insurance policies.[11] Instead, the Debtor urges me to rely on *In re Hoffpauir*,[12] a case interpreting the Idaho exemption statute, which, the Debtor concedes, contains an express provision for insurance proceeds.

---

[9] *In re Wiesner*, 267 B.R. at 35.

[10] *Id.* at 38.

[11] *In re Thurston*, 99-11836-JNF, 2007 WL 1860892, *11 (Bankr. D. Mass. June 27, 2007).

[12] *In re Hoffpauir*, 258 B.R. 447, 455 (Bankr. D. Idaho 2001).

6

## IV. DISCUSSION

Rights to exemptions are fixed as of the date of the petition.[13] Under 11 U.S.C. § 522(b), "an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection," which allows a debtor to claim the exemptions provided for under applicable state law.[14] In Massachusetts, Mass. Gen. Laws ch. 235, § 34 sets forth the property that a debtor may exempt from seizure or execution. It provides in relevant part:

> The following property of the debtor shall be exempt from seizure on execution:
>
> First, The necessary wearing apparel, beds and bedding for the debtor and the debtor's family, 1 heating unit used for warming the dwelling house, 1 stove, 1 refrigerator, 1 freezer and 1 hot water heater used primarily for the personal, family or household use of the debtor or a debtor's family and the amount each month, not exceeding $500, reasonably necessary to pay for fuel, heat, refrigeration, water, hot water and light for the debtor and the debtor's family;
>
> Second, Other household furniture necessary for the debtor and the debtor's family, not exceeding $15,000 in value;
>
> * * *
>
> Eighteenth, The debtor's aggregate interest, not to exceed $1,225 in value, in jewelry held primarily for the personal, family or household use of the debtor or the debtor's spouse or dependent.[15]

Under 11 U.S.C. § 522(l), exemptions listed on Schedule C are presumptively valid in the absence of an objection.[16] Therefore, Fed. R. Bankr. P. 4003(c) places the burden to prove that an exemption is not properly claimed on the objecting party.[17] Nevertheless,

---

[13] 11 U.S.C. § 522(b)(3)(A).

[14] 11 U.S.C. § 522(b)(1), (3)(A).

[15] Mass. Gen. Laws ch. 235, § 34.

[16] 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

[17] Fed. R. Bankr. P. 4003(c).  *See Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

7

> [i]f the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with *unequivocal evidence* to demonstrate that the exemption is proper . . . the burden of persuasion, however, always remains with the objecting party.[18]

I am cognizant that "[p]ublic policy dictates that exemption laws . . . should be liberally construed to comport with their beneficent spirit."[19] Still, "statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result,"[20] and "the primary source of insight into the intent of the Legislature is the language of the statute."[21] Also, "[l]ike a federal court sitting in diversity, a Bankruptcy Court ruling on an issue of state law must rule as it believes the highest court of the state would rule."[22]

The analysis starts with the statute. Here, the Debtor is clearly not seeking to exempt the personal property described in the above quoted sections of Mass. Gen. Laws ch. 235, § 34, but instead the insurance proceeds she has earmarked to replace those assets. This section does not expressly protect insurance proceeds or allow them to be substituted for any of the specified

---

[18] *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (emphasis added). *See In re Genzler*, 426 B.R. 407, 418 (Bankr. D. Mass. 2010); *In re Toppi*, 378 B.R. 9, 11 (Bankr. D. Me. 2007); *In re Roberts*, 280 B.R. 540, 544-545 (Bankr. D. Mass. 2001).

[19] *Dwyer v. Cempellin*, 424 Mass. 26, 29 (1996).

[20] *Provencal v. Commonwealth Health Ins. Connector Auth.*, 456 Mass. 506, 514 (2010) (*quoting Sullivan v. Brookline*, 435 Mass. 353, 360 (2001)).

[21] *Int'l Fid. Ins. Co. v. Wilson*, 387 Mass. 841, 853 (1983). *See In re Jones*, 467 B.R. 256, 259 (Bankr. D. Mass. 2011); *Provencal v. Commonwealth Health Ins. Connector Auth.*, 456 Mass. at 513–514.

[22] *In re Miller*, 113 B.R. at 101. *See Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1, 6 (1st Cir. 2003); *Caron v. Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir. 1996); *Hildebrandt v. Collins (In re Hildebrandt)*, 320 B.R. 40, 44 (B.A.P. 1st Cir. 2005); *In re Desroches*, 314 B.R. 19, 21-22 (Bankr. D. Mass. 2004). I note that neither party requested the issue be certified to the Supreme Judicial Court of Massachusetts.

personal property.[23] This omission is important, as it is long established under Massachusetts law that

> fire insurance policies are personal contracts providing for the payment of indemnity to the insured in case of loss, and *the amount received does not stand for nor represent the property damaged or destroyed* although the measure of indemnity depends upon the determination of the value of the interest of the insured in the property covered by the policies.[24]

It is a cardinal rule of statutory interpretation that "[t]he Legislature must be assumed to know the preexisting law and the decisions of [the Supreme Judicial Court]."[25] Therefore, in the absence of any express mention, I find it unlikely that the Legislature intended that insurance proceeds could either stand in or be earmarked as exempt in place of the personal property described in Mass. Gen. Laws ch. 235, § 34.

This conclusion is supported by the 2010 amendment to the Massachusetts Homestead Statute.[26] As part of a comprehensive re-drafting of the Homestead Statute, the Legislature enacted a new provision, Mass. Gen. Laws ch. 188, § 11, which provides limited protection to proceeds received on account of damage to the estate of homestead, such as by fire or other casualty.[27] Notably, the Legislature did not adopt the concept of earmarking in this section. Instead, the Mass. Gen. Laws ch. 188, § 11(a)(2) provides that such proceeds are exempt for a defined period until one of the terminating events occurs.[28] Because Mass. Gen. Laws ch. 235,

---

[23] Because Mass. Gen. Laws ch. 235, § 34 does not have an express provision for insurance proceeds, the Debtor's reliance on *In re Hoffpauir* is misplaced.

[24] *Converse v. Boston Safe Deposit & Trust Co.*, 315 Mass. at 548 (emphasis added).

[25] *Selectmen of Topsfield v. State Racing Comm'n*, 324 Mass. 309, 313 (1949).

[26] Mass. Gen. Laws ch. 188, § 1 *et seq.*

[27] Mass. Gen. Laws ch. 188, § 11(a)(2).

[28] *Id.* Specifically, proceeds received on account of damage from a fire or other casualty are exempt for a period ending on: "(i) the date upon which the reconstruction or repair to the home is completed or the date on which the

§ 34 was amended shortly after the enactment of Mass. Gen. Laws ch. 188, § 11, it is telling that the Legislature, despite being aware of the issues regarding the exemption of insurance proceeds, did not draft a similar provision applying to personal property.[29]

The Debtor contends that earmarking is simply akin to pre-bankruptcy planning, but this characterization is inapt. The type of "pre-bankruptcy planning" to which she refers is the non-fraudulent conversion of non-exempt assets into exempt assets on the eve of bankruptcy in order to shield them from creditors.[30] In contrast, the Debtor seeks to treat an otherwise non-exempt asset as an exempt asset based on some possible future conversion that may or may not ultimately occur. Frankly, this is the absence of a plan, as the Debtor took no affirmative steps to accomplish anything.

As a practical matter, exemption earmarking, even as an equitable remedy, is too unwieldy and poses too many questions to be workable. For example, may a debtor earmark any funds, or just insurance proceeds? May a debtor earmark insurance proceeds towards an asset that would be exempt under the statute, but was not owned prior to the casualty? How long may funds remain earmarked before they lose exempt status? What if the earmarked funds are not used for the designated purpose? How could a bankruptcy trustee possibly police a debtor's use of earmarked funds? The proper functioning of the bankruptcy system as a whole requires a bright line test for exemptions that is inconsistent with concept of earmarking.

Contrary to the Debtor's assertion, *In re Wiesner* does not suggest a different result, and her reliance on disclosure and scheduling misses the mark. In *In re Wiesner*, the debtor was

---

person benefited by the homestead acquires another home the person intends to occupy as a principal residence; or (ii) 2 years after the date of the fire or other casualty, whichever first occurs." *Id.*

[29] *See* The Estate of Homestead, 2010 Mass. Legis. Serv. Ch. 395 (S.B. 2405) (approved December 16, 2010); Regulation of Debt Collection, 2010 Mass. Legis. Serv. Ch. 431 (S.B. 2557) (approved January 7, 2011).

[30] *See, e.g., In re Miller*, 113 B.R. at 104-105.

10

killed in a fire that destroyed his home a mere ten hours after filing his Chapter 7 petition.[31] The estate administrator later argued that the insurance proceeds were removed from the bankruptcy estate by the debtor's valid homestead exemption.[32] Judge Rosenthal of this district ruled that the insurance proceeds sprang from the insurance policy and therefore, were not exempt.[33] He further reasoned that this result was not "unfair," because "[a]ny 'benefit' the Trustee receives . . . derives not from the destruction of property but rather from the failure . . . to list and exempt *the insurance policy*."[34] While the Debtor here has attempted to avoid that same problem by scheduling and claiming an exemption in the insurance proceeds, her claim is nevertheless flawed because the exemption she invokes does not apply to the asset she holds, namely, cash.

In sum, the statute does not expressly provide for the type of exemption the Debtor seeks to claim, even though the Legislature clearly knew how to draft such a provision. Moreover, my equitable powers can offer her no relief, as I cannot use them to re-draft the statute and that is precisely what the approval of earmarking amounts to in this context. Therefore, in light of these observations, I conclude that the Legislature did not intend, and predict that the Supreme Judicial Court would not bless, the exemption of earmarked insurance proceeds as the types of personal property specified in Mass. Gen. Laws ch. 235, §§ 34(1), (2), or (18).

While I recognize this is a bitter pill, particularly in light of the imminent foreclosure sale and the Debtor's compromised ability to store replacement personal property in the absence of a standing home, I am constrained by the text of the statute. Although these circumstances are unusual, this case nonetheless emphasizes a severe gap in the Massachusetts exemption statute

---

[31] *In re Wiesner*, 267 B.R. at 35.

[32] *Id.* at 36.

[33] *Id.* at 37.

[34] *Id.* at 38 (emphasis added).

requiring legislative attention. When a prepetition loss occurs, a debtor, like the one here, is left with the proceeds of an insurance contract. Under Massachusetts law, one can only exempt funds to the extent of "2,500 in cash or savings or other deposits in a banking or investment institution."[35] This, of course, effectively offers no protection to insurance proceeds. If such a debtor chose the federal exemptions, she could exempt up to $12,725 under 11 U.S.C. § 522(d)(5), but this too is problematic because it would not protect all the insurance proceeds for the replacement of personal property or *any* of the insurance proceeds for damage to the homestead itself.[36] A postpetition casualty is of even more concern, as neither the Massachusetts statute nor 11 U.S.C. § 522(d) provide a separate exemption for insurance policies. This means that if an insurance policy can be claimed as exempt at all, a debtor must to claim the insurance policy, whose benefit is contingent on loss, at the expense of actual assets.

## V. CONCLUSION

In light of the foregoing, I will enter an order sustaining the Objection.

*[signature: William C. Hillman]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 30, 2013

Counsel Appearing:

    Evan P. Lowney, Canton, MA,
        for the Debtor
    Carolyn A. Bankowski, Patricia Remer, Office of the Chapter 13 Trustee, Boston, MA,
        for the Trustee

---

[35] Mass. Gen. Laws ch. 235 § 34(15).

[36] 11 U.S.C. § 522(d)(5).